IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RONALD RUNYAN, *et al*                                        PLANITIFFS

VS.                      CASE NO. 69-CV-00042

STEPHENS SCHOOL DISTRICT, *et al*                         DEFENDANTS

## ORDER

Before the Court is Defendant Stephens School District's ("Stephens") Motion for Temporary Restraining Order and Preliminary Injunction and Petition for Judicial Review. (ECF No. 19).[1] Also before the Court is Intervenor Arkansas State Board of Education's ("ASBE") Motion for Approval of Administrative Consolidation Order. (ECF No. 30).[2] An evidentiary hearing on the motions was held on June 4, 2014. (ECF No. 47). After reviewing the parties' written briefs, the testimony set forth at the hearing, and all relevant exhibits, the Court finds that the ASBE's motion for approval should be granted and that Stephens's motion for preliminary injunction should be denied.

## BACKGROUND

Before discussing recent events that led to the filing of the present motions, a brief overview of the history of this case is needed. This action began almost forty-five years ago with the filing of a complaint against the McNeil School District. Plaintiffs alleged that the McNeil School District was operating a dual school system based on race and color and engaging in discriminatory

---

[1] Intervenors Arkansas State Board of Education; Camden Fairview School District; Magnolia School District; and Nevada School District have filed responses in opposition to the motion. (ECF Nos. 22, 25, & 43). Stephens has filed replies in support of the motion. (ECF Nos. 24 & 26).

[2] Stephens has filed a response in opposition to the motion. (ECF No. 38). The Arkansas State Board of Education has filed a reply. (ECF No. 42).

1

practices. Subsequently, the parties jointly filed a "Plan for Unification" (ECF No. 7) which was approved by this Court on January 5, 1970. (ECF No. 8). The Court retained jurisdiction over the case for the purpose of enforcing the consent decree.

The specific provisions of the 1970 unification plan and subsequent order are integral to the issues presented in this case. The plan called for complete desegregation of the Northside and Southside schools in McNeil.[3] Northside students within walking distance to Southside were to walk to Southside so that they could then be bused to Northside, and vice versa. For students being bused in from more rural areas, the plan stated that they would be "transported on a desegregated basis." The plan also made provisions for staff assignments and specific improvements that were to be made at both campuses.

The unification plan was implemented by the McNeil School District, and this case lay dormant for thirty-four years without any complaints of non-compliance with the plan. In 2004, the case was re-opened to address the passage of Ark. Code Ann. § 6- 13-1601, *et seq.* ("Act 60"). Act 60 required school districts with an "average daily membership" of fewer than 350 students for two consecutive years to be consolidated with or annexed to another school district. In 2004, the McNeil School District and the Stephens School District elected to voluntarily consolidate pursuant to Act 60, and this Court approved that consolidation on June 23, 2004.[4] (ECF No. 15). At the request of Plaintiffs, and with no objection by Defendants, the Stephens School District was added as a Defendant in this case on July 14, 2004 "in order to continue this litigation." (ECF No. 17).

After the 2004 McNeil-Stephens consolidation, there was no movement in the case until this year. Once again, this movement was the result of consolidation decisions made pursuant Act 60.

---

[3] More specifically, the plan called for grades 7-12 to operate at the Northside school on a desegregated basis and for grades 1-6 to operate at the Southside school on a desegregated basis.

[4] When Act 60 was passed in 2004, the McNeil School District's enrollment was 241 and the Stephens School District's enrollment was 346.

The Stephens School District's average daily membership had fallen below 350 students for two years in a row, thereby requiring its involuntary consolidation into another district under Act 60. On April 11, 2014, the Arkansas State Board of Education ordered the involuntary administrative consolidation of the Stephens School District with the Camden Fairview, Magnolia, and Nevada School Districts pursuant to Ark. Code Ann. § 6-13-1603 (a)(3)-(4). The consolidation is to be effective on July 1, 2014. The plan calls for the Stephens School District to be divided along county lines and consolidated with the corresponding school districts. Students living in Ouachita County will be consolidated with Camden Fairview; students living in Nevada County will be consolidated with the Nevada School District; and students living in Columbia County will be consolidated with the Magnolia School District.

While Stephens clearly meets the criteria for consolidation under Act 60, the parties feel that this Court's continuing jurisdiction over the 1970 consent decree necessitates a Court order approving the consolidation. The ASBE's present motion requests this approval. Conversely, Stephens's motion for injunctive relief requests that the Court decline to approve the consolidation and prevent the closure of the Stephens campus.[5] The parties' motions raise the same issues and ask the Court to decide the following question: whether the consolidation of Stephens into the Camden Fairview, Magnolia, and Nevada School Districts violates the 1970 McNeil consent decree. Stephens's only argument on this point is that the proposed consolidation could result in excessive transportation time for students being bused to Camden Fairview. Stephens requests that the Court impose a maximum one-way transportation time of forty-five minutes for these students. The ASBE and Intervenors dispute Stephens's arguments that the transportation time from Stephens to Camden Fairview would be excessive. The ASBE also argues that the busing issues raised by

---

[5] Nothing in the ASBE's administrative consolidation order requires the closure of the schools in Stephens. The decision regarding the closure of the Stephens campus is left to the receiving district—in this case, Camden Fairview. *See* Ark. Code Ann. § l-13-1603(e).

Stephens are outside the scope of the 1970 desegregation order. The Court will address these arguments in turn.

## JURSIDICTION

Questions regarding the Court's jurisdiction over this proposed consolidation and the continued application of the 1970 consent decree are fairly unsettled and deserve some attention before addressing the merits of the parties' motions. The 1970 consent decree contained very specific provisions relating to a school district that no longer exists.

Because this case was not formally dismissed[6] after the consolidation and dissolution of the McNeil School District, the parties have taken the position that the 1970 consent decree is still in effect and that the Court must approve the consolidation. This is a position shared by the Arkansas Attorney General who issued an advisory opinion directing the ASBE to seek this Court's approval of the consolidation in light of the lingering 1970 consent decree. (ECF No. 19, Exh. 4).

The Court has serious concerns about the continued applicability of a very specific consent decree directed toward a school district that has been dissolved. Nonetheless, in order to provide some much needed finality to this situation, the Court will take up the issue and assume *arguendo* that the consent decree is still in effect and requires this Court's approval of the consolidation.[7]

## DISCUSSION

"A party seeking modification of a consent decree 'must establish that a significant change in facts or law warrants revision of the decree.'" *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, No. 1, 56 F.3d 904, 914 (8th Cir. 1995) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502

---

[6] It should be noted that McNeil did file a motion to dismiss this case in 2004. (ECF No. 9). The parties then reached an agreement regarding the voluntary consolidation of Stephens and McNeil. Thereafter, the parties submitted an agreed order to the Court that denied the motion to dismiss and approved the consolidation. That order was entered on June 23, 2004. (ECF No. 15). In sum, at the request of the parties, the Court did not delve into the merits of McNeil's Motion to Dismiss and what effect the 1970 consent decree would have in the future.

[7] After the Stephens consolidation has taken effect, the Court will require the parties to submit argument regarding the continued applicability of the 1970 consent decree, or lack thereof, to the receiving school districts.

U.S. 367, 393, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992)). If a significant change in circumstances is shown, the Court must then determine "whether the proposed modification is suitably tailored to the changed circumstance." *Id.* (internal quotations omitted).

    A. *Excessive Transportation*

All of the parties in this case agree that the administrative consolidation of Stephens is a change in circumstance that requires modification of the 1970 consent decree. Stephens does not dispute that its student body has dwindled considerably and that consolidation is mandated under Act 60. Stephens's only argument against consolidation is rooted in the potential for excessive transportation times for Stephens students being bused to the receiving school districts. Stephens argues that potential for excessive transportation time makes consolidation an "unsuitable modification" to the consent decree. To remedy this problem, Stephens asks the Court to impose a 45 minute one-way transportation limit.

While the 1970 consent decree addresses the issue of busing students on a desegregated basis, it says nothing regarding actual transportation times. This raises the question of this Court's authority to impose a maximum transportation time or even consider Stephens's concerns regarding the transportation time. The job of this Court is to enforce the terms of the settlement agreement reached by the parties in 1970. *Knight v. Pulaski Cnty. Special Sch. Dist.*, 112 F.3d 953, 954 (8th Cir. 1997). The fact that a settlement agreement has been entered does not make the school district a "ward[] of the Court"—it does not give the Court general jurisdiction over every alleged injustice committed by a school district. Simply put, if the settlement is silent on the subject of transportation time, this Court's authority does not extend to that issue. Stephen's motion could be denied on this ground alone. The Court will nonetheless go on to discuss the merits of Stephens's arguments.

Stephens has alleged that students being bused to Camden Fairview could be on a bus for up to four hours a day. Stephens has not submitted evidence or testimony to support this estimate. Stephens has not made any specific assertions about the transportation times for students traveling to Magnolia or Nevada, but they request that the 45-minute one-way transportation time be applied to these students as well.

As to students living in the McNeil area who would now be bused to Magnolia, the Court has not been given any evidence whatsoever that their transportation times will be excessive. The driving distance from McNeil to Stephens is ten miles. The driving distance from McNeil to Magnolia is six miles. Based on these numbers, it would appear that the transportation burden for McNeil residents will actually be lower after consolidation. With no evidence to the contrary, the Court sees no reason to impose any sort of maximum transportation time for these students.

As to Nevada County students, the most recent numbers provided to the Court show that Stephens's current enrollment of 300 students would be divided between only Camden Fairview and Magnolia since no Stephens students currently reside in Nevada County. Accordingly, a discussion of Nevada County transportation times is unnecessary.

The travel burdens of the Stephens students who will be bused to Camden Fairview were discussed in detail at the hearing of this matter on June 4, 2014. The city of Stephens is situated approximately 20 miles from the city of Camden. The majority of the Ouachita County students, roughly 58%, live in or very near the city of Stephens while the remaining students live along Highway 79, north of Stephens.

Camden Fairview Superintendent Robert Davis testified as to Camden Fairview's preliminary busing plans for these Ouachita County students. Davis testified that the district plans to operate three buses in the Stephens area. One of these buses will circulate on the east side of Stephens with limited bus stops. The second bus will circulate on the west side of Stephens with

limited bus stops. Davis estimated that students would have to walk no further than a block to reach a bus stop. These two buses would then proceed to Camden without making any further stops. Davis testified that the pickup and travel time to Camden would be approximately 25 minutes. The third bus will pick up students just outside the city of Stephens and proceed along Highway 79 making stops along the way. Davis testified that the pickup and travel time to Camden for this bus would also be roughly 25 minutes. Once inside Camden, Davis testified that it could take the buses 25 minutes to make drop offs at the five schools in the district. However, Davis noted that this time could be shortened by arranging for students to switch buses at staging areas where they would then be taken to their respective schools by a more direct route.

The testimony above indicates that students living in the Stephens area are facing a one-way transportation time of approximately 50 minutes. No evidence or testimony to the contrary has been submitted. The testimony by Robert Davis establishes a transportation time that is in step with Stephens's requested maximum. Accordingly, the Court sees no reason to take the extraordinary step of mandating a maximum transportation time when there is no evidence to indicate that the travel time will actually be excessive. If the school year begins and the Stephens students being bused to Camden Fairview feel that their travel times are in fact excessive and not in line with the testimony submitted by Robert Davis, they are free to seek Court intervention at that time.[8]

    B. *Demographics*

While excessive transportation time is the only disputed issue in this case, the Court finds that the current demographics of these four school districts, and the post-consolidation demographics, warrant some discussion. For the 2013-2014 school year, Stephens's student population was 81% African-American; Camden Fairview's student population was 60% African

---

[8] This intervention would likely need to take the form of a new lawsuit against the Camden Fairview School District. Again, the future application of the 1970 consent decree is an unsettled question, and transportation time was not covered by the terms of the settlement agreement.

American; Magnolia's student population was 53% African American; and Nevada's student population was 33% African American. Again, most recent numbers provided to the Court show that Stephens's current enrollment of 300 students would be divided between only Camden Fairview and Magnolia since no Stephens students currently reside in Nevada County. One-hundred seventy-four of these students reside in Ouachita County and would attend Camden Fairview. The remaining 126 students reside in Columbia County and would attend Magnolia. Importantly, the influx of students into Camden Fairview and Magnolia would not alter their current racial demographics. These numbers demonstrate that the students from Stephens would be moving to districts that are actually *more* racially diverse than the Stephens School District. Accordingly, there is nothing in these percentages to suggest that the desegregation efforts outlined in the 1970 unification plan will be hindered in any way by consolidation.

## CONCLUSION

For the reasons state above, the Court finds that the ASBE's Motion for Approval of Administrative Consolidation Order (ECF No. 30) should be and hereby is **GRANTED**. Stephens School District's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 19) should be and hereby is **DENIED**. The Court retains jurisdiction over this matter in order to decide Stephens's pending Motion to Consolidate (ECF No. 32) and hear further argument from the parties regarding the future application of the 1970 consent decree.

IT IS SO ORDERED, this 25th day of June, 2014.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge